IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


LYNN ARTHUR TAYLOR,               §
                                  §
        Petitioner,               §
                                  §
v.                                §            2:12-CV-0055
                                  §
WILLIAM STEPHENS, Director,       §
Texas Department of Criminal Justice, §
Correctional Institutions Division, §
                                  §
        Respondent.               §


**<u>REPORT AND RECOMMENDATION TO DENY
PETITION FOR WRIT OF HABEAS CORPUS</u>**


Came for consideration the Petition for Writ of Habeas Corpus filed by petitioner LYNN

ARTHUR TAYLOR.  By his habeas application, petitioner challenges his April 24, 2008,

convictions for possession of a controlled substance of four grams or more but less than 200

grams and possession of a firearm by a felon out of the 320th Judicial District Court of Potter

County, Texas, and the resultant twenty-five and twelve year sentences.  *See State v. Taylor*,

Nos. 55,385 and 55386 .  For the reasons set forth below, it is the opinion of the undersigned

United States Magistrate Judge that the petition be DENIED.

I.
<u>FACTS AND PROCEDURAL HISTORY</u>

Petitioner was charged by indictment on May 30, 2007, in Cause No. 55,385 with

possession with intent to deliver cocaine in the amount of four grams or more but less than 200

grams with an enhancement for using or exhibiting an deadly weapon, and in Cause No. 55,386

petitioner was charged with possession of a firearm by a felon.  The possession with intent to

deliver indictment contained two enhancement paragraphs alleging petitioner had prior

convictions for the felony offenses of burglary with intent to commit theft and aggravated

robbery with a deadly weapon.  The Amarillo Court of Appeals summarized the facts of the case

as follows:

> On March 5, 2007, members of the Amarillo police department SWAT team executed a no "knock" search warrant for crack cocaine at a city residence. According to the warrant['\]s supporting affidavit, a confidential informant told police that within forty-eight hours of March 5 appellant possessed crack cocaine at the residence and represented to the informant that the substance was crack cocaine. When officers entered the residence, they found appellant['\]s adult daughter Amber Richardson on a living room couch. In the upstairs bedroom, they located appellant in bed with Christa Morales.
>
> Downstairs, off the living room, was what officers termed a bar area. There, in shelving above the bar officers found two baggies containing, respectively, 19.5 grams and 5.5 grams of a substance later identified as cocaine, and a loaded .25 caliber handgun. The shelves contained three letters addressed to appellant at the residence. From these envelopes, police obtained three finger prints matching appellant and one unidentified print. Another letter was addressed to Morales at the residence. A digital scale was found in a bank bag in a drawer below the bar. A finger print lifted from the scale matched appellant. A cabinet yielded a gun holster, a box of .45 caliber ammunition, and a box of .25 caliber ammunition. Among canned food items in a kitchen cabinet, officers found 138 one-dollar bills. In kitchen trash, officers found baggies with the corners removed. In the upstairs bedroom occupied by appellant and Morales, officers found $1,500 cash in the pocket of appellant's pants. Appellant['\]s wallet contained his driver's license, which listed the residence as his address. Also in the bedroom was a glass crack pipe that officers attributed to Morales. It contained residue.
>
> Appellant was indicted for possession, with intent to deliver, of cocaine in an amount four grams or more but less than two hundred grams and unlawful possession of a firearm. The guilt-innocence phase of trial was by jury. Evidence revealed appellant was on parole for a felony conviction at the time of the alleged unlawful possession of a firearm. A Texas Department of Public Safety chemist testified to his opinion, based on testing, that the substance in the two baggies was cocaine. A police officer explained that small amounts of crack cocaine are sold in baggies with the corners removed to better conceal the drug. Another officer explained that it is not unusual to find large amounts of cash associated with illegal drug sales. In his opinion, the

sale of illegal drugs is a "cash and carry business." According to the officer, narcotics are typically sold in amounts purchased with ten and twenty dollar bills. There was also testimony from an officer that dealers of crack cocaine use digital scales to weigh narcotics. And plastic bags configured in this manner as those found in the kitchen trash are used in the sale of small amounts of narcotics. According to other testimony, Richardson had children and children's clothing and toys were located in the residence, she was a "resident" of the residence, and mail bearing her name had been delivered to the residence. There was testimony that the residence was owned jointly by appellant and his siblings.

The jury convicted appellant of the lesser-included narcotics offense of possession of cocaine in the amount alleged by the indictment and the firearm violation. The sentencing range was enhanced by appellants prior felony convictions and a deadly weapon finding. The court sentenced appellant to prison terms of twenty-five years on the narcotics violation and twelve years on the firearm violation.

*Taylor v. State*, Nos. 07-08-205-CR, 07-08-206-CR, 2010 WL 1027534, at *1-2 (Tex. App.—Amarillo Mar. 22, 2010, pet ref'd).

Petitioner was convicted after a trial in which petitioner waived his right to counsel and represented himself. The court of appeals affirmed Taylor's conviction on March 22, 2010. *Id.* Taylor then filed a petition for discretionary review with the Texas Court of Criminal Appeals, and the petition was refused on November 10, 2010. On March 10, 2011 petitioner filed a state application for a writ of habeas corpus. The Texas Court of Criminal Appeals denied the application without written order on May 18, 2011. Petitioner filed a federal petition in October of 2011 in the United States District Court for the District of Columbia, and that court dismissed the petition, without prejudice, on October 28, 2011. Petitioner then filed this petition on March 1, 2012.

II.
PETITIONER'S CLAIMS

Petitioner alleges his conviction and sentence violate his rights under the United States

Constitution because:

1.    Petitioner is actually innocent of the charges brought against him;

2.    An officer was allowed to present "prejudice testimony" that petitioner's fingerprint was found on a scale in petitioner's residence;

3.    The trial court erred by excluding exculpatory evidence, violating petitioner's right to present a complete defense;

4.    Petitioner's conviction violated the Double Jeopardy Clause;

5.    The Court erred by "prejudging" the merits of petitioner's motion to suppress;

6.    Petitioner was prejudiced by not being allowed to present a witness in support of his motion to suppress;

7.    The trial court committed plain error by failing to, sua sponte, instruct the jury on an affirmative defense;

8.    The evidence was insufficient to support a deadly weapon finding;

9.    The evidence was insufficient to support petitioner's conviction for possession of a controlled substance[1];

10.   The evidence was insufficient to support petitioner's conviction for possession of a firearm; and

11.   The search warrant affidavit was insufficient to support the issuance of a search warrant.

III.
AEDPA

This federal petition was filed after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Consequently, the provisions of the AEDPA apply to this case.

---

[1]Petitioner claims to be challenging the sufficiency of the evidence to support his conviction for "possession with intent to deliver."  Pet. at 7b.  The Court notes petitioner was convicted for simple possession, not possession with intent to deliver.  The Court interprets the petition as challenging his conviction for simple possession.

Under 28 U.S.C. § 2254(d), a federal writ of habeas corpus on behalf of a person in custody under a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the prior adjudication:

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision adjudicated on the merits in state court and based on a factual determination will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden to rebut the presumption of correctness by clear and convincing evidence. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application, it is an adjudication on the merits, which is entitled to the presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim."); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (recognizing this Texas state writ jurisprudence).

## IV.
## ACTUAL INNOCENCE

In his first ground, petitioner claims he is actually innocent. To state a claim of actual

innocence on habeas review a petitioner must demonstrate that his actual innocence renders a court's refusal to address underlying constitutional claims a fundamental miscarriage of justice. *Lucas v. Johnson*, 132 F.3d 1069, 1076 (5th Cir. 1998). Actual innocence is not a free standing ground for relief. *United States v. Scruggs*, 691 F.3d 660, 671 (5th Cir. 2012). Rather, it is a gateway to consideration of claims of constitutional error that would otherwise be barred. *Id.* Petitioner has not identified any claim which is procedurally barred and as to which he contends actual innocence would operate to overcome such bar.

Even if the Court were to assume, for the sake of argument, that some sort of procedural bar does exist, petitioner's actual innocence claim fails. In order to establish a claim of actual innocence, petitioner would need to demonstrate his innocence through newly discovered evidence that was unknown to the defendant at the time of trial. *Lucas*, 132 F.3d at 1076. Petitioner has not presented any evidence that was not readily available at trial. His main complaint deals with fingerprints found on a scale in petitioner's residence. He argues that the fingerprint, which was found and which matched petitioner's known prints, may have actually belonged to his daughter. This claim, however, is not evidence. Instead, it is speculation, and it was available at the time of trial. Likewise, petitioner's complaint that evidence might show petitioner's fingerprint was found on another object and then somehow transferred to the scale by a police officer is speculative, and petitioner has failed to support his claim with any evidence. Petitioners first ground should be denied.

V.

<u>PREJUDICIAL TESTIMONY</u>

In his second ground, petitioner claims he is entitled to relief because an officer presented "prejudice testimony" at trial. In this ground, petitioner does not appear to present a cognizable

claim.  There is no rule against the presentation of prejudicial testimony.  Not only is it not unusual, but it is expected that witnesses for the state will present testimony that is, in some way, inculpatory to the accused.  Petitioner is not entitled to habeas relief merely because a police officer witness presented evidence that helped prove his guilt.  It is undoubtedly true that, as petitioner states in his memorandum, the evidence of the fingerprints had the "utmost impact" on the result of the trial, however that does not render the evidence inadmissible.  If petitioner intended to claim the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, he has not properly alleged such a claim

To the extent petitioner is claiming the officer perjured himself by intentionally mis-identifying the fingerprints found on the scale, petitioner offers no more than bare assertions that the fingerprints *might* have belonged to someone else.  Even assuming the fingerprints did belong to someone else, petitioner has not presented any evidence showing the testifying officer perjured himself because petitioner has not offered any evidence showing the testifying officer knew the fingerprints did not belong to petitioner.  Such bare assertions are insufficient to make a case for habeas relief.  Petitioner's second ground is without merit.

Likewise, petitioner's claim that he is entitled to an evidentiary hearing to prove these claims is without merit because petitioner has not offered anything more than bare assertions that an evidentiary hearing will uncover probative evidence.  Petitioner has also failed to show this evidence was incapable of being developed during the original trial.  In essence, petitioner seeks an evidentiary hearing to possibly find evidence which may or may not be helpful to his case.  Such is not the proper purpose of an evidentiary hearing in a federal habeas case.  Petitioner's request for an evidentiary hearing is DENIED.

VI.
<u>DENIAL OF RIGHT TO PRESENT DEFENSE</u>

In his third ground, petitioner claims the trial court erred by preventing him from presenting evidence to show someone else committed the offense.  Namely, petitioner claims he was entitled to present evidence that his daughter had, in the past, possessed a gun similar to the gun found in petitioner's residence, and the trial court erred by excluding that evidence  The evidence petitioner wished to present was testimony from two investigating officers concerning security camera footage of petitioner's daughter allegedly throwing away a gun similar to the one petitioner was accused of possessing.  Petitioner contends this evidence would establish that his daughter, Amber Richardson, had a modus operandi of possessing the type of weapon that petitioner was found guilty of possessing.  Petitioner also makes a more general argument, that because he was unable to produce evidence linking Amber Richardson to a similar type of gun as the one found in his residence, petitioner was not allowed to present his defense that Amber Richardson resided in petitioner's house and that the drugs and gun may have belonged to her.

The Supreme Court has held that due process requires that a criminal defendant be allowed to present evidence relevant to the defendant's claimed defense.  *See Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L. Ed. 2d 297 (1973).  To that end, the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or are disproportionate to the ends that they are asserted to promote. *Holmes v. South Carolina*, 547 U.S. 319, 326, 126 S. Ct. 1727, 1731, 164 L. Ed. 2d 503 (2006).  The rule serves to overturn arbitrary rules that exclude important defense evidence but do not serve any legitimate interest. A specific application of this principle is found in rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which

they are charged. *Id.* at 327 (citing 41 C.J.S., Homicide § 216, pp. 56–58 (1991) ("Evidence tending to show the commission by another person of the crime charged may be introduced by accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded"); 40A Am.Jur.2d, Homicide § 286, pp. 136–138 (1999) ("[T]he accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged . . . [Such evidence] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial")).  However, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. *Id.*.

Petitioner claims that, as in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L. Ed. 2d 297 (1973), he was denied his right to present evidence of his innocence.  In *Chambers*, the defendant was not permitted to cross examine the alibi of a witness who the defendant claimed was actually responsible for the crime based upon an antiquated "voucher rule."  This rule required the party offering a witness to vouch for the credibility of that witness and prohibited the offering party from impeaching the witness but, according to the Supreme Court, served no discernable purpose.  Likewise, the defendant was not permitted to introduce evidence supporting his defense and challenging the alibi of the allegedly responsible party from several other witnesses because of the application of Mississippi's hearsay rule.  In both instances, the defendant was denied the opportunity to present his primary defense: that someone else was

responsible for the crime.  In this case, however, petitioner not prohibited from advancing such a defense.  Instead, he was merely prevented from presenting evidence that might have bolstered his defensive theory rather than his defensive theory in its entirety.  He was still allowed to present other evidence related to his defense.  For example, petitioner elicited from witnesses the fact that Richardson lived in petitioner's residence, received mail there, and kept many personal belongings in the residence.  He was able to adduce testimony relating the location of petitioner's daughter and her proximity to the drugs and weapon at the time of the raid.  Petitioner was able to adduce from several of the police officers who executed the search warrant that Amber Richardson was on the couch, in the living room of petitioner's home and that the living room was much closer to the drugs and weapon than the bedroom where petitioner was found.  Petitioner was allowed to urge the argument that the gun and drugs belonged to his daughter during closing arguments.  *See, e.g.*, 4 RR 163.  To the extent petitioner's claim is that he was not allowed to present his defense that Amber Richardson committed the crime, it is without merit.

To the extent petitioner is understood to be arguing specifically that it was error for the trial court to exclude evidence of petitioner's daughter's possession of a similar (but different) firearm during the commission of another offense, petitioner's claim is without merit.  As petitioner's brief points out, the rules of evidence hold that evidence is relevant if such evidence has the tendency to make a fact of consequence more or less likely.  From the testimony adduced before the judge out of the presence of the jury, witnesses stated Richardson was handed a gun by someone in a car, she fired that gun, and then dumped it into a Toot-n-Totem (convenience store) trash cannister.  It was not error for the trial court to hold the evidence did not show

Richardson had a modus operandi of owning, possessing, or acquiring firearms because the evidence presented by petitioner did not show that Richardson owned the gun, permanently acquired the gun, or even possessed it for more than a few moments before getting rid of it. Petitioner did not claim that the gun allegedly used in the earlier shooting belonged to Richardson or that Richardson continued to possess it.  He did not argue that the gun found in the search of petitioner's residence was the same gun Richardson used during the alleged shooting or was related to that gun in any way.  The only proof of a relation between the two guns offered by petitioner was that the guns were similar.  In short, petitioner did not make any proffer showing the relevance of the gun used in the earlier shooting, and the trial judge did not err in excluding that evidence.

## VII
## DOUBLE JEOPARDY

In his fourth ground, petitioner claims his criminal punishment, following an earlier civil forfeiture proceeding, violated his Fifth Amendment Double Jeopardy rights.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const., amend. V. "The Double Jeopardy Clause protects against (1) a second prosecution after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *United States v. Paternostro*, 966 F.2d 907, 911 (5th Cir. 1992) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

"In order to establish a double jeopardy claim, the defendant must first present a prima facie claim that double jeopardy principles have been violated." *United States v. Cruce*, 21 F.3d 70, 74 (5th Cir.1994) (citing *United States v. Goff*, 847 F.2d 149, 169 (5th Cir. 1988); *United*

*States v. Stricklin*, 591 F.2d 1112, 1118 (5th Cir.1979)).  "Once the defendant proffers sufficient proof to support a nonfrivolous claim, the burden shifts to the government to show that double jeopardy principles do not bar the proceeding."  *Cruce*, 21 F.3d at 74 (citing *Stricklin*, 591 F.2d at 1118-19); see also *United States v. Schinnell*, 80 F.3d 1064, 1066 (5th Cir. 1996).

Petitioner Taylor's claim is grounded in the "multiple punishments" prong of the Double Jeopardy Clause's protections.  "The protection against multiple punishments prohibits the Government from punishing twice, or attempting a second time to punish criminally for the same offense."  *United States v. Ursery*, 518 U.S. 267, 273, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (quoting *Witte v. United States*, 515 U.S. 389, 396, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (quoting *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938)) (internal quotations omitted).  "The rationale behind the protection of the Double Jeopardy Clause rests upon the doctrine that the Government or the sovereign with all of its power should not be allowed to make repeated attempts to convict an individual for an alleged offense, or subject him to multiple punishments."  *United States v. Beszborn*, 21 F.3d 62, 67 (5th Cir. 1994).

Petitioner contends his criminal conviction was a prohibited second punishment because he had previously been "punished" as a result of an earlier civil forfeiture proceeding.  For petitioner's claim to have merit, the civil forfeiture proceeding must have been a criminal punishment.  Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction.  *Helvering*, 303 U.S. at 399, 58 S.Ct. at 633.  A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other."  *Ward*, 448 U.S. at 248, 100 S.Ct. at 2641.  Even in those cases where the legislature "has indicated an intention to establish a civil penalty,

courts have inquired whether the statutory scheme was so punitive either in purpose or effect," *id*. at 248–249, 100 S.Ct., at 2641, as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty," *Rex Trailer Co. v. United States*, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956).

In making this latter determination, courts examine the factors listed in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168-169, 83 S.Ct. 554, 567-568, 9 L. Ed. 2d 644 (1963), including: (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter "; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face," *id*. at 169, 83 S.Ct., at 568, and "only the clearest proof " will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty, *Ward*, 448 U.S. at 249, 100 S.Ct., at 2641–2642 (internal quotation marks omitted).

In the case of *in rem* proceedings (as opposed to *in personam* proceedings, which more closely resemble civil penalties), the Supreme Court has held a subsequent criminal proceeding does not violate the Double Jeopardy Clause. *See United States v. Ursery*, 518 U.S. 267, 287, 116 S.Ct. 2135, 2146, 135 L.Ed. 549 (1996). The Texas Court of Criminal Appeals has held that the nature of the Texas forfeiture proceedings, being a proceeding against the property rather

than against the person, renders the proceedings *in rem* rather than *in personam*, and thus does not trigger the double jeopardy bar. *Fant v. State*, 931 S.W.2d 299, 306-08 (Tex. Crim. App. 1996). Likewise, when a party does not contest a forfeiture or does not appear at the forfeiture proceeding, he cannot have been "punished" in the constitutional sense. *United States v. Morgan*, 84 F.3d 765, 766-67 (5th Cir. 1996).

Here, the forfeiture proceeding was against currency recovered during the raid that uncovered criminal activity leading to petitioner's conviction. The proceeding was, thus *in rem* because it was not against petitioner and did not seek to impose an additional fine on petitioner or seek to recover additional property unrelated to the drug charges. Additionally, because petitioner did not appear at the forfeiture hearing, he was never put in jeopardy of punishment. *Morgan*, 84 F.3d at 766-67. Because the proceeding was an *in rem* proceeding and not an *in personam* proceeding assessing a fine or other punishment, and because the forfeiture proceeding was a default proceeding, petitioner's fourth ground is without merit. *United States v. Perez*, 110 F.3d 265, 267 (5th Cir. 1997).

## VIII.
## <u>SEARCH WARRANT</u>

In his fifth and sixth grounds, petitioner contends the trial court abused its discretion by prejudging the merits of petitioner's motion to suppress and committed error by judging the merits of petitioner's motion to suppress without receiving sworn testimony. In his eleventh ground, petitioner claims the search warrant affidavit did not contain facts showing probable cause existed for the issuance of a search warrant.

Petitioner's illegal search and seizure claims are barred from federal habeas corpus review by *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Federal

courts do not review a state court's application of Fourth Amendment principles in habeas corpus proceedings unless the petitioner was denied a full and fair opportunity to litigate his claims in state court. *Id.* Here, petitioner had an opportunity to present his Fourth Amendment claim prior to trial and at trial. He also presented this claim in his state habeas corpus petition which was denied by the state's highest court. Petitioner had a full and fair opportunity to litigate any search and seizure claims in the state courts. Petitioner's fifth, sixth, and eleventh grounds should be denied.

Regarding petitioner's contention that the trial court erred by judging the merits of petitioner's motion to suppress without the aid of sworn testimony, petitioner cites authority which only holds it is error for a defendant to be denied the right to call any witnesses at all. Petitioner has not presented authority indicating it is error to decide a motion to suppress without the aid of testimony. *See Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923, 18 L. Ed. 2d 1019 (1967) ("[Petitioner] has the right to present his own witnesses to establish a defense."); *Adanandus v. State*, 866 S.W.2d 210, 228 (Tex. Crim. App. 1993). Petitioner was not denied the right to call witnesses generally but he was prohibited from calling certain witnesses the trial judge deemed to only possess irrelevant information. The only witnesses petitioner was denied to call were judges who had previously served in some capacity on petitioner's case. Petitioner first attempted to call the judge who authorized the search warrant, but petitioner was unable to explain what relevant evidence he expected to adduce from this witness. As the trial court explained to him, the warrant must stand or fail based upon the information contained within the four corners of the warrant and supporting documentation. Petitioner was not able to explain to the trial court and has not explained to this court what testimony the judge who issued the search

warrant would have offered that was relevant to show the warrant was invalid.  Regarding the

second witness, identified as a judge who recused earlier in the proceedings, petitioner failed to

explain what evidence could be elicited from that judge that would advance petitioner's claim.

Petitioner has not shown the trial court erred by not permitting him to call these witnesses or that

he was not allowed to call any other witnesses.  Petitioner's fifth, sixth, and eleventh grounds are

without merit and should be denied.

IX.
JURY INSTRUCTION

In his seventh ground, petitioner claims the trial court erred by failing to sua sponte give

an instruction regarding an affirmative defense.  As the state points out in its response, petitioner

fails to specify what affirmative defense he thinks there was that an instruction should have been

given on, and none is apparent from the trial record.  In support of his argument that the trial

court erred by not, sua sponte, instructing the jury on an affirmative defense, petitioner merely

cites cases in which the defense theory presented at trial supported the giving of a jury

instruction on an affirmative defense.  But, as mentioned above, petitioner did not rely on a

defensive theory utilizing an affirmative defense.  Instead, petitioner's defense was that the drugs

found in his house were not his.  Petitioner cites *United States v. Montgomery*, but that case

states that it is not error for a court to fail to give such instructions where the "defendant does not

offer the instruction or rely on the theory of defense embodied in that instruction."  *United States

v. Montgomery*, 150 F.3d 983, 996 (9th Cir. 1998).  The main thrust of petitioner's defense, and

indeed, the argument put forward in petitioner's memorandum on this issue, is that the

contraband found in petitioner's residence belonged to his daughter, Amber Richardson.  This is

not an affirmative defense, it is an assertion of innocence.  Because petitioner did not present an

affirmative defense, it was not error for the trial court to not, sua sponte, give an affirmative

defense instruction to the jury.  Petitioner's seventh ground is without merit.

## X.
## SUFFICIENCY OF THE EVIDENCE

In his eighth, ninth, and tenth grounds, petitioner claims he was convicted on less than

sufficient evidence of his possession of drugs, use of a firearm, and possession of a firearm by a

felon.

For purposes of federal habeas corpus review, a state conviction need only satisfy the

legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d

560 (1979).[2]  To determine the legal sufficiency of the evidence, a federal court must consider

whether, viewing all the evidence "in the light most favorable to the prosecution, any rational

trier of fact could have found the existence of facts necessary to establish the essential elements

of the offense beyond a reasonable doubt." *Id.* at 318–19, 99 S.Ct. at 2789.  In making this

determination, the reviewing court must resolve all credibility choices and conflicting inferences

in favor of the fact finder.  *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999).  It is the

fact-finder's responsibility alone "to fairly resolve conflicts in the testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443

U.S. at 319, 99 S.Ct. at 2789.  The reviewing court must determine if the evidence is

constitutionally sufficient to support the conviction, i.e., whether the evidence satisfied the

"substantive elements of the criminal offense as defined by state law." *Brown v. Collins*, 937

F.2d 175, 181 (5th Cir. 1991).

---

[2]Additionally, the Texas Court of Criminal Appeals has overturned *Clewis v. State*, 922 S.W.2d 126 (Tex. 1996), the case creating the factual sufficiency standard, ruling that there was no meaningful distinction between factual and legal sufficiency, and that "legal sufficiency is the only standard a reviewing court should apply." *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. 2010).

At trial, it is the sole province of the jury as the finder of fact to assess the credibility of the witnesses and to choose among reasonable constructions of the evidence. *See United States v. Green*, 180 F.3d 216, 220 (5th Cir. 1999). A jury is not to be second-guessed by a reviewing court in its choice of which witnesses to believe. *See United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995). On federal habeas review, "[a] federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts." *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985). Moreover, "[t]he habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact." *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993).

As an initial matter, as the state points out in its brief, the claim is likely procedurally barred. The sufficiency of the evidence relating to the gun claims was not presented on direct appeal and, as Texas courts have long held, sufficiency of the evidence claims may only be raised on direct appeal. *West v. Johnson*, 92 F.3d 1385, 1398 n. 18 (5th Cir. 1996). While petitioner raised a sufficiency of the evidence claim relating to his drug possession charge on appeal, he failed to follow his intermediate appeal with a petition for discretionary review. Because petitioner did not file any direct appeal as to the gun charges and filed only an intermediate appeal as to the drug charges, petitioner has failed to properly present his constitutional claims to the state court of last resort. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999) (holding that to exhaust state remedies, prisoners must give state courts one *full* opportunity to address the alleged constitutional deficiencies, including an appeal to the state's highest court). Thus, petitioner's claims are likely barred as unexhausted because petitioner failed to properly raise the claims before the Texas

Court of Criminal Appeals on direct appeal, and only raised them before the Texas Court of Criminal Appeals in a state habeas proceeding, an avenue through which the State of Texas will not consider sufficiency of the evidence claims.

The procedural bar to these claims notwithstanding, the merits of the claims are addressed below.

## A. Possession and Use of a Firearm

In his eighth and tenth grounds, petitioner argues there is insufficient evidence to support the jury's finding that petitioner possessed a firearm as a felon and used that firearm in furtherance of his possession of crack cocaine.  Because under the facts of this case possession of a firearm by a felon is necessarily an element of the offense of use of a firearm during drug possession, the Court has consolidated the two issues because a finding that petitioner possessed a firearm in furtherance of his possession of crack cocaine would include a determination that the firearm was possessed by petitioner, who it is not disputed, is a felon.

Assuming, arguendo, that the claim is not procedurally barred, the evidence is sufficient. While petitioner contends the gun was not properly linked to him, the majority of petitioner's argument consists of an attempt to relitigate the facts of his case rather than an argument that the evidence is insufficient.  As set out above, this Court is not the place  to contest the facts of the case; this Court is limited to determining whether any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt.

Texas courts have interpreted "use" to mean utilizing in order to achieve the commission of a felony or in immediate flight from a committed felony, and "use" can mean even simple

possession of a weapon. *See Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 1989).

Possessing a firearm for the purpose of protecting or facilitating possession of contraband is

considered "use" under Texas law. *Patterson v. State*, 169 S.W.2d 938, 942 (Tex. Crim. App.

1989). Whether or not petitioner used the firearm depends, then, on whether petitioner

possessed the weapon to further his possession of cocaine. This presents a factual issue. This

Court will defer to the decisions of the fact finder and must resolve all credibility choices and

conflicting inferences in favor of the fact finder. *See Cyprian*, 197 F.3d at 740. Here, a

reasonable fact finder could infer from the evidence that the weapon was possessed by petitioner

and used to protect the contraband. The weapon was found on premises owned by petitioner,

and petitioner was present at the time of the raid. The jury could also infer from the location of

the pistol, in a cabinet near the contraband, that it was possessed for the purpose of protecting the

drugs. Despite petitioner's contention, the distance of petitioner from the weapon is not relevant:

the law does not require the weapons to be physically on the person or within the reach of the

accused. *Coleman v. State*, 145 S.W.3d 649, 658 (Tex. Crim. App. 2004). The fact that

petitioner is not physically in possession of the contraband is not relevant, because the law

recognizes that possessors of contraband have duties, responsibilities, and biologically necessary

needs that may separate them from time to time from their contraband. Likewise, the fact that

petitioner's daughter was closer to the weapon at the time of the raid presents a factual issue,

which petitioner was free to argue before the jury, but such does not render the evidence linking

petitioner to the weapon insufficient. The jury could reasonably infer that petitioner possessed

the weapons for the purpose of protecting the contraband. Petitioner's eighth and tenth grounds

are without merit.[3]

## B. Possession of Drugs

In his ninth ground, petitioner argues there were no affirmative links sufficient to prove petitioner knowingly possessed drugs. To prove possession, the state was required to show petitioner exercised actual care, custody, control, or management of the contraband, and that petitioner knew the substance was contraband. Tex. Health & Safety Code Ann. § 481.002(38) (2009).

While petitioner maintains he could not have had possession of the contraband because his daughter was closer to the contraband, it is not necessary to prove *exclusive* possession. *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). While Texas has an "affirmative links" rule, designed to protect innocent bystanders who jointly possessed property where contraband is found, the affirmative links rule simply requires some additional facts and circumstances affirmatively linking the accused to the contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Texas courts consider a non-exclusive list of fourteen factors when determining whether sufficient affirmative links existed between the accused and the contraband:

(1) the defendant's presence when a search is conducted;

(2) whether the contraband was in plain view;

(3) the defendant's proximity to and the accessibility of the narcotic;

(4) whether the defendant was under the influence of narcotics when arrested;

(5) whether the defendant possessed other contraband or narcotics when arrested;

---

[3]The Court notes that the federal firearm statute, 18 U.SC. 924©, requires the defendant to actually use or carry the firearm at the time of the offense. The Texas statute is less stringent.

(6) whether the defendant made incriminating statements when arrested;

(7) whether the defendant attempted to flee;

(8) whether the defendant made furtive gestures;

(9) whether there was an odor of contraband;

(10) whether other contraband or drug paraphernalia were present;

(11) whether the defendant owned or had the right to possess the place where the drugs were found;

(12) whether the place where the drugs were found was enclosed;

(13) whether the defendant was found with a large amount of cash; and

(14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n. 12 (Tex. Crim. App. 2006).  As pointed out in the Seventh Circuit Court of Appeals opinion, petitioner was not only tied to the contraband by his joint ownership of the property, petitioner had also resided at the premises for six months prior to the raid, petitioner's pant's pocket contained large amounts of cash "in denominations common to drug transactions", a confidential informant linked petitioner to the contraband, and mail and a digital scale with petitioner's fingerprints were found near the contraband.  *Taylor v. State*, Nos. 07-08-00205, 07-08-00206, 2010 WL 1027534 (Tex. App.—Amarillo March 22, 2010, pet. ref'd).  Indeed, in petitioner's legal memorandum, he admits that five of the fourteen factors are applicable to his case.  While the evidence at trial could also be interpreted as showing the drugs may have also been possessed by someone other than petitioner, the existence of countervailing evidence is not enough to render the evidence insufficient, and deciding which evidence holds more weight was the province of the jury which determinations this Court will

not now second-guess.  It is enough to note that, as a constitutional matter, the evidence, construed in the light most favorable to the verdict, was sufficient to support the conviction. Petitioner has not shown the evidence was insufficient to support the jury's finding that petitioner possessed drugs.

V.

RECOMMENDATION

Petitioner has failed to present any meritorious claim warranting federal habeas corpus relief.  Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner LYNN ARTHUR TAYLOR be DENIED on the merits.

VI.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___24th___ day of October 2014.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)©, or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).